IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| SHERMAN STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:04-0625-MBS-BM |
| v. | ) | |
| | ) | |
| THE UNIVERSITY OF | ) | **REPORT AND RECOMMENDATION** |
| SOUTH CAROLINA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      This action has been filed by the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., alleging employment discrimination.  The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on April 13, 2005.  After having been granted an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendant's motion on May 18, 2005, following which Defendant filed a reply memorandum on June 1, 2005.  A surreply brief was then filed by the Plaintiff on August 12, 2005.  Defendant's motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C.  The Defendant has filed a motion for summary judgment.  As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

1



## Background and Evidence[2]

Plaintiff is an African-American male who began working for the Defendant in 1978 as a Trade Specialist I in the maintenance department. <u>Plaintiff's Deposition</u>, pp. 32-33. Plaintiff's duties included maintenance and repair work on heating and air-conditioning equipment, electrical and lighting equipment, and servicing the plumbing system in his assigned area. <u>Id</u>, pp. 33-34; <u>see also</u> <u>Plaintiff's Deposition (Defendant's Exhibit 8)</u>.   Plaintiff's position was eventually upgraded to a Trade Specialist II, although he continued to perform the same duties. <u>Id</u>, p. 33.  With the exception of 1994, Plaintiff consistently received an overall "meets" rating on his annual performance evaluations. Plaintiff received an overall "exceeds" performance rating in 1994. <u>Plaintiff's Deposition</u>, p. 100.

Plaintiff applied for several promotions during his period of employment with the Defendant, but never received a promotion. <u>Plaintiff's Affidavit</u>, ¶¶ 4-5.  Plaintiff has at various times identified different positions which he contends he was discriminatorily denied in asserting his failure to promote claims; however, in his memorandum opposing summary judgment Plaintiff lists nine (9) specific denied promotions as being the promotions at issue in this lawsuit, as follows: Job Position # 980228 (February 1998), Job Position # 980712 (July 1998), Job Position # 980771 (July 1998), Job Position # 980814 (August 1998), Job Position # 980815 (August 1998), Job Position # 981011 (October 1998), Job Position # 990131 (January 1999), Job Position # 990559

---

[2]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. <u>Pittman v. Nelms</u>, 87 F.3d 116, 118 (4th Cir. 1996).



(May 1999), and Job Position # 990781 (August and September 1999).[3]

After Plaintiff failed to receive a promotion to any other position, he filed a complaint of discrimination with the Defendant's Office of Equal Opportunity Programs, which investigated his claims. Plaintiff's Deposition, pp. 98-99. That office eventually determined that Plaintiff's complaint was without merit. Id. Plaintiff thereafter resigned his employment with the Defendant on September 29, 2000. Id, at p. 102.

On or about October 5, 1999, Plaintiff as well as some other maintenance employees of the Defendant had also filed a joint administrative charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Plaintiff's Deposition, p. 24; see also Plaintiff's Deposition (Defendant's Exhibit 1). The EEOC reviewed these complaints, which alleged discrimination between August 19, 1997 and October 1, 1999, for each individual. Plaintiff's Deposition, p. 24; see also Plaintiff's Deposition (Defendant's Exhibit 1). After Plaintiff's receipt of a right to sue letter on or about May 21, 2001, this action was filed asserting claims for disparate treatment race discrimination and for retaliation.[4]

## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

---

[3]Defendant disputes that all nine (9) of these positions are at issue in this lawsuit. The undersigned has addressed this argument in Section I of this Report and Recommendation, infra.

[4]Plaintiff initially filed a joint lawsuit together with the other maintenance employees. That initial action was subsequently withdrawn so that each individual Plaintiff could separately pursue their own individual claims in this Court.



as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

## I.

### (Scope of Claim)

The initial issue to be addressed by the Court is which of the promotions identified by the Plaintiff in his brief are appropriate for review in this case. Defendant correctly notes in its brief that acts of discrimination occurring more than three hundred (300) days prior to a party's filing of an administrative charge of discrimination are time barred. Specifically, Title VII requires that a claimant file a charge of discrimination with the EEOC within one hundred and eighty (180) days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state", the claimant's filing deadline is extended to three hundred (300) days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency, or within thirty (30) days of the state agency's termination of its proceedings, whichever is earlier. See 42 U.S.C. § 2000e-5(e).

It is undisputed that South Carolina is a deferral state, and that the South Carolina Human Affairs Commission (SCHAC) is the appropriate state agency for purposes of initiating state proceedings. The record reflects that Plaintiff's administrative charge was forwarded to SCHAC by the EEOC on or about October 16, 1999, although it was investigated by the EEOC pursuant to a "work sharing agreement." Plaintiff's Deposition (Defendant's Exhibit 4). Therefore, Plaintiff had three hundred (300) days to file his administrative charge following a

4



discriminatory act, and a failure by the Plaintiff to do so bars him from pursing a Title VII lawsuit in this Court with respect to any alleged discriminatory act which falls outside of this three hundred (300) day period.  United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); Mickel v. South Carolina State Employment Serv., 377 F.2d 239, 242 (4th Cir. 1967); see National RR Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002).[5]

Plaintiff's administrative charge indicates that it was received by the EEOC on October 5, 1999, and was thereafter transmitted to SCHAC.  Plaintiff's Deposition, Exhibit 4. Based on a filing date of October 5, 1999, any failure to promote discrimination claims occurring prior to December 9, 1998 would not be actionable.  Williams, 370 F.3d at 429; Morgan, 536 U.S. at 114.  Of the nine (9) positions identified by the Plaintiff in his brief, Defendant argues, and Plaintiff does not dispute, that four (4) of these positions, job #s 980228, 980712, 980771, and 980814, fall outside of the three hundred (300) day claim period and therefore may not ordinarily be considered by this Court as part of Plaintiff's claim.[6]  The Defendant does not dispute that three

---

[5]A claimant may in some circumstances include claims beyond this three hundred (300) day period where the Defendant's conduct is deemed to be a "continuing violation."  However, under the applicable caselaw, promotions are separate and distinct acts for purposes of a Title VII claim, and timely promotion claims may not therefore be considered as part of a "continuing violation" together with any prior (and untimely) allegedly discriminatory promotion decisions which involved the same claimant.  See Amtrak v. Abner Morgan, Jr., 536 U.S. 101, 117 (2002) [finding that "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'," and prior discrete discriminatory acts which are not filed within the 300 day time limit "are untimely filed and no longer actionable."]; Williams v. Giant Food, Inc., 370 F.3d 423, 429 (4th Cir. 2004) [continuing violation doctrine does not apply to a failure to promote claim, as a promotion decision is a discreet act of discrimination]; cf. Huckabay v. Moore, 142 F.3d 233, 239 (5th Cir. 1998) [distinguishing applicability of the continuing violation theory to hostile work environment claims, for which it may be used, from other types of claims, such as failure to promote].

[6]But see, Section II, infra, discussing doctrine of equitable estoppel.



(3) of the remaining promotion decisions, identified by the Plaintiff as job #s 990131, 990559, and 990781, fall within the three hundred (300) day claim period.

With respect to the remaining two (2) promotion decisions, job #s 980815 and 981011, Defendant contends that both of these hiring decisions were made on December 8, 1998, and are therefore outside of the three hundred (300) day period for consideration.  Plaintiff argues, however, that the EEOC actually received his administrative complaint on October 1, 1999, not October 5, and that the three hundred (300) day claim period therefore relates back to any alleged acts of discrimination which occurred on or after December 5, 1998, not December 9, 1998.  In support of this argument, Plaintiff has submitted an intake record which purportedly shows that he first contacted the EEOC on October 1, 1999.  <u>See</u> <u>Plaintiff's Exhibit 2</u>.

Defendant contends that Plaintiff's Exhibit 2 merely reflects that October 1, 1999 may have been when the Plaintiff first contacted the EEOC or made an inquiry with that office, but that the other evidence before this Court definitively shows that Plaintiff did not file his administrative charge until October 5, 1999.[7]  <u>Plaintiff's Deposition, (Defendant's Exhibit 4)</u>; <u>see also</u> <u>Plaintiff's Deposition, (Defendant's Exhibit 5)</u>  [EEOC investigator's case log indicating that Plaintiff's charge was drafted and docketed on October 5, 1999].  In the alternative, Defendant also argues that Plaintiff cannot pursue a claim with respect to these two positions because he did not identify either of these positions in his administrative charge as promotions which he had been

---

[7]Defendant also questions the authenticity of Plaintiff's Exhibit 2, although the Defendant has offered no reason for this Court to consider this document to be a fake.  Plaintiff's Exhibit 2 appears to be a document which can easily be authenticated at trial. Therefore, the undersigned has considered this document for purposes of evaluating Plaintiff's claim. However, Plaintiff should file appropriate documentation with the Court to authenticate this document within five (5) days of the filing date of this Report and Recommendation.



discriminatorily denied.

The burden of proving satisfaction of administrative requirements falls on the Plaintiff.  Williams v. Enterprise Leasing Co. of Norfolk/Richmond, 911 F.Supp. 988, 993 (E.D.Va. 1995).  With respect to establishing a filing date for purposes of determining the three hundred (300) day limitations period, it is clear that a complaint of discrimination filed with SCHAC is required to be "in writing, under oath or affirmation." See S.C.Code Ann. § 1-13-90; S.C.Code Reg. 65-1B(4) and 65-2B. An administrative complaint filed with the EEOC is also required to be in writing and verified. 42 U.S.C. § 2000e-5(b).  Here, the copy of the charge of discrimination submitted to the Court meets the requirements of being in writing and verified. However, it is undated, and does not have a filed date stamp.  Plaintiff's Deposition, (Defendant's Exhibit 1).  Since other EEOC records as well as the record of the EEOC case investigator indicate that it was filed on October 5, 1999; Plaintiff's Deposition, (Defendant's Exhibits 4 and 5); Defendant argues that, at most, Plaintiff's contact with the EEOC on October 1, 1999 was a mere inquiry, which does not constitute the filing of a written charge. Cf. Bartlett v. Fruehauf Corp., 642 F.Supp. 954, 956 (W.D.N.C. 1986) [discussion with EEOC does not constitute filing a charge]; Madison v. St. Joseph Hospital, 949 F.Supp. 953, 960 (D.N.H. 1996) [discussion of claim with state agency does not constitute filing a charge]; Salazar v.  Am.Tel. & Tel.Co., 715 F.Supp. 351, 354 (S.D.Fla. 1989) [same] (dicta).

However, Plaintiff attests in an affidavit that the EEOC did actually "receive" his administrative charge on October 1, 1999, an argument which he contends is supported by the intake record of that date.  Plaintiff's Exhibit 1, ¶ 50; Plaintiff's Exhibit 2.  Since no other evidence relating to or explaining that initial contact has been submitted, and for purposes of summary



judgment all disputed issues of fact are considered in the light most favorable to the Plaintiff, the undersigned concludes that Plaintiff's sworn statement together with his Exhibit 2 is sufficient to create an issue of fact as to when his administrative charge was filed.  *Cf*. also 29 C.F.R. § 1601.12(b) (2004) ["[A] charge is sufficient when the Commission receives from the person making the charge a *written* statement...."]; Lane v. Wal-Mart Stores East, Inc., 69 F.Supp.2d 749, 753 (D.Md. 1999) [allegations contained in information form may be cured by a formal charge under some circumstances]; see also Michelson v. Exxon Research and Engineering Co., 808 F.2d 1005, 1009-1010 (3rd Cir. 1987) [finding that oral allegations documented by an intake officer may be sufficient to constitute a charge].

As for Defendant's alternative argument, it is true that Plaintiff's administrative filing fails to mention either job # 980815 or # 981011 as being positions that Plaintiff believed he had been discriminatorily denied. See Plaintiff's Deposition, (Defendant's Exhibit 6);[8] Smith v. First Union Nat'l Bank, 202 F.3d 234, 247-248 (4th Cir. 2000) [A plaintiff's EEOC charge defines the scope of his subsequent right to institute a civil suit]. However, although Plaintiff did not list these two positions on the attachment to his administrative claim, the Defendant discussed both of these positions and the reasons why Plaintiff was not awarded either of these positions in its response to the administrative agency's inquiry. See Plaintiff's Exhibit 4.  The "Determination" issued by the EEOC after it had reviewed all of this information did not address each individual promotion decision, instead finding generally that "[t]he evidence indicates that in spite of equal and sometimes superior qualifications, Blacks as a class were denied promotions and received lower

---

[8]While two of the promotions listed on Plaintiff's Deposition Exhibit 6 are not identified by number, the two individuals indicated as having been hired on that document are not the two individuals who were hired for job #s 980815 or 981011.



wages than their White fellow-employees. There is, therefore, reason to believe that [Defendant] has engaged in practices which violate Title VII." <u>see</u> <u>Plaintiff's Exhibit 1, Attachment 32</u>.

Since the EEOC did not discuss each individual promotion decision, but only issued a blanket decision, and no other evidence has been presented to verify the scope of the Agency's investigation, the undersigned must assume for purposes of summary judgment that all the information provided by that Defendant in its response was reviewed by that Agency. The law provides that a claim that was not included in an administrative charge but was nonetheless investigated by the administrative agency as part of its investigation of the claimant's allegations may be considered exhausted for purposes of a subsequent lawsuit; <u>Smith v. First Union Nat'l Bank</u>, 202 F.3d 234, 248 (4th Cir. 2000); <u>Tran v. Standard Motor Products, Inc.</u>, 10 F.Supp.2d 1199, 1208 (D.Kan. 1998) [even where claimant fails to assert a claim in their administrative charge, if that claim was nevertheless considered by the administrative agency as part of the administrative investigation of the claimant's administrative filing, then the claim is properly exhausted]; <u>but</u> <u>see</u> <u>LaPorta v. City of Chicago</u>, No. 95-2899, 1999 WL 965970 at * 3 (N.D.Ill. 1999); and absent any evidence to the contrary a reasonable fact finder could draw the inference or conclusion from the evidence submitted that the Agency considered Plaintiff's failure to receive a promotion with respect to job #s 980815 and 981011 as part of its review of Plaintiff's claim.

Therefore, the undersigned has considered both of these promotion decisions (job #s 980815 and 981011), together with the other three undisputed timely promotion claims (job #s 990131, 990559, and 990781), in evaluating the merits of Defendant's motion for summary



judgment.[9]

## II.

### (Claim for Equitable Relief)

With respect to the four claims that are time barred (job #s 980228, 980712, 980771, and 980814), Plaintiff argues that the doctrine of equitable tolling should be invoked to allow him to nevertheless pursue those claims.  Plaintiff contends (and Defendant does not dispute) that he first pursued the Defendant's internal Equal Opportunity procedures prior to filing his administrative claim with EEOC/SCHAC, and argues that when an individual invokes an employer's internal grievance process, equitable tolling of the three hundred (300) day limitations period is appropriate, citing to Phillips v. Columbia Gas of West Virginia, Inc., 347 F.Supp.533 (D.W.Va. 1972), aff'd 474 F.2d 1342 (4th Cir. ).

However, the Defendant correctly notes that, since the Phillips decision, the United States Supreme Court has specifically held that the statute of limitations for a Title VII claim is not tolled while an employee exhausts any internal remedy the employer has made available.  See Delaware State College v. Ricks, 449 U.S. 250, 261 (1980); International Union of Electrical Radio and Machine Workers v. Robbins & Myers, Inc., 429 U.S. 229 (1976).  Therefore, this

---

[9]Defendant also argues that one of Plaintiff's otherwise timely claims, job # 990781, should be procedurally barred from consideration because Plaintiff failed to exhaust his administrative remedies with respect to this position.  Specifically, Defendant argues that Plaintiff filed his charge of discrimination on October 5, 1999, but that position 990781 was not filled until October 21, 1999, and was therefore not part of his administrative claim.  However, the evidence reflects that Plaintiff did list this job as one for which he had been denied a promotion in his administrative filing, and that the Defendant addressed this job in its response to the administrative agency.  See Plaintiff's Deposition, Exhibit 6; Plaintiff's Exhibit 4.  Defendant's argument that this claim was not exhausted at the administrative level is therefore without merit.



argument is without merit, and Plaintiff does not make any alternative argument for equitable

tolling in this case, nor can the undersigned discern any basis for invoking that doctrine based on

a review of the materials and arguments provided.

"Equitable relief is reserved for only the most deserving complainants," usually

where there exists affirmative misconduct. Polsby v. Chase, 970 F.2d 1360, 1363 (4th Cir. 1992),

vacated on other grounds, 113 S.Ct. 1940 (1993)

> Federal courts have typically extended equitable relief only sparingly. We have
> allowed equitable tolling in situations where the claimant has actively pursued his
> judicial remedies by filing a defective pleading during the statutory period, or where
> the complainant has been induced or tricked by his adversary's misconduct into
> allowing the filing deadline to pass. We have generally been much less forgiving
> in receiving late filings where the claimant failed to exercise due diligence in
> preserving his legal rights.

Polsby, 970 F.2d at 1363, [quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)].

Here, Plaintiff has presented no evidence of any misconduct on the part of the Defendant which

kept Plaintiff from timely filing his charge, nor is there any evidence of misconduct on the part of

any administrative employee with SCHAC or the EEOC which prevented Plaintiff from timely

filing his charge. Plaintiff simply failed to timely file his charge with respect to the four (4) time

barred positions. Ramirez v. City of San Antonio, 312 F.3d 178, 183 (5th Cir. 2002) ["The party

who invokes equitable tolling bears the burden of demonstrating that it applies in his case."]; see

also Madison, 949 F.Supp. at 960.[10]

---

[10]To the extent Plaintiff may contend that he was represented by counsel at the time of his
administrative filing, and it was therefore his legal counsel who failed to timely proceed with these
four promotions, any such argument would actually further undermine his request for equitable
relief. See Morse v. Daily Press, Inc., 826 F.2d 1351, 1353 (4th Cir. 1987), cert. denied, 484
U.S. 965 (1987) [Retention of counsel precludes equitable claims]; Polsby, 970 F.2d at 1363-1364
[Title VII Defendant does not bear the responsibility when Plaintiff receives mistaken advice or



In reaching the conclusion set forth hereinabove, the undersigned is not signaling a lack of concern over Plaintiff's claims. However, the Fourth Circuit has strictly construed the statutory filing requirements for Title VII cases, holding that "[p]rocedural requirements...for gaining access to the...courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Polsby, 970 F.2d at 1364, vacated on other grounds, 113 S.Ct. 1940 (1993), citing Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984); see Poteat v. Mack Trucks Inc., No. 96-1437 1997 WL 33117, **4 (4th Cir. January 28, 1997); Chappell v. Emco Machine Works Co., 601 F.2d 1295, 1303 (5th Cir. 1979). By his own acknowledgment, Plaintiff failed to file his administrative charge within three hundred (300) days of the promotion decisions with respect to job #s 980228, 980712, 980771, and 980814. Based on this evidence, and in light of the applicable caselaw and statutory requirements, the undersigned has no choice but to find that the promotion decisions at issue in job #s 980228, 980712, 980771, and 980814 are time barred, and cannot be considered by this Court as part of Plaintiff's claim.

### III.

### (Race Discrimination Failure to Promote Claims)

With respect to the five (5) promotion decisions remaining at issue, Plaintiff claims that he was discriminated against on the basis of his race when he was denied promotions to these positions. This claim requires proof of intentional discrimination, either by direct evidence or by

---

representation from counsel]; cf. Plowman v. Cheney, 714 F.Supp. 196, 200-201 (E.D.Va. 1989) [Reliance on the actions of counsel does not excuse a Plaintiff's failure to file a proper administrative complaint, nor does counsel's failure to do the research or make the appropriate inquiries]; Wagher v. Guy's Foods, 768 F.Supp. 321, 325-326 (D.Kan. 1991) [An attorney is presumed to have a working knowledge of Title VII's filing requirements], aff'd, 990 F.2d 726 (2d Cir. 1993), cert. denied, 510 U.S. 947 (1993).



the structured procedures set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

<u>See</u> <u>also</u> <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981).  Plaintiff has not

offered any direct evidence of discrimination in his failure to be promoted.[11] However, the absence

of direct evidence of discrimination is not fatal to Plaintiff's claim, as direct proof of discrimination

rarely exists in this type of case.  In such a situation, indirect evidence of discrimination may be

presented through the <u>McDonnell Douglas</u> framework.[12]

The United States Supreme Court articulated a three-part analysis for reviewing

discrimination cases in <u>McDonnell Douglas</u>.  <u>First</u>, Plaintiff must establish a prima facie case of

discrimination.  Once a prima facie case has been established, a rebuttable presumption is created that

the employer unlawfully discriminated against the Plaintiff.  <u>Second</u>, once this presumption has been

established, the burden of production shifts to the employer to show a legitimate, non-discriminatory

reason for its actions.  <u>Third</u>, if the employer shows a legitimate, non-discriminatory reason for its

actions, the burden is then on the Plaintiff to come forward with evidence that the employer's asserted

reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of

---

[11]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 56 F.3d 542, 548-549 (4th Cir. 1995), <u>rev'd on other grounds</u>, 517 U.S. 308 (1996); <u>Black's Law Dictionary</u>, 460 (6th Ed. 1990) (citing <u>State v. McClure</u>, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); <u>see</u> <u>Williams v. General Motors Corp</u>, 656 F.2d 120, 130 (5th Cir. 1981), <u>cert.</u> <u>denied</u>, 455 U.S. 943 (1982).

[12]Consideration of Plaintiff's claim under the so-called "mixed-motive" analysis is also now allowed, even though Plaintiff has presented only circumstantial, or indirect, evidence of discrimination. <u>Hill v. Lockheed Martin Logistics Mgt., Inc.</u>, 354 F.3d 277, 284-285 (4th Cir. 2004); <u>see</u> <u>also</u> <u>Mereish v. Walker</u>, 359 F.3d 330, 339-340 (4th Cir. 2004); <u>Machinchick v. PB Power, Inc.</u>, 398 F.3d 345, 352 (5th Cir. 2005) [ADEA]. Previously, consideration of a claim under the mixed motive analysis was only proper in direct evidence cases. Here, however, both parties have argued Plaintiff's claim only under the traditional <u>McDonnell Douglas</u> proof scheme.



the employer were really based on Plaintiff's race. <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802-805; <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 252-256; <u>Conkwright v. Westinghouse Elec. Corp.</u>, 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 252-253; <u>see also</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993).

In order to establish his prima facie case, Plaintiff must show that (1) he is a member of a protected class; (2) he applied for the position(s) in question;  (3) he was qualified for the position(s); and (4) he was rejected for the position(s) in favor of someone from outside of the protected class, or there is some other evidence giving rise to an inference of unlawful discrimination. <u>Amirmokri v. Baltimore Gas & Elec. Co.</u>, 60 F.3d 1126, 1129 (4th Cir. 1995), citing <u>Carter v. Ball</u>, 33 F.3d 450, 458 (4th Cir. 1994); <u>see also</u> <u>Alvarado v. Bd. of Trustees of Montgomery Community College</u>, 928 F.2d 118, 121 (4th Cir. 1991). It is undisputed that Plaintiff is a member of a protected class (African-American), and for purposes of summary judgment the Defendant has not otherwise expressly contested the issue of Plaintiff's establishment of a prima facie case in its brief.  Rather, Defendant contends that it has established a legitimate, non-discriminatory reason for the employment decisions at issue, and directs its argument for summary judgment to the Plaintiff's purported failure to establish any pretext for the Defendant's employment decisions.  For his part, Plaintiff does not dispute that the Defendant has articulated a legitimate, non-discriminatory reason for its promotion decisions, and therefore the only issue before this Court is whether there is a sufficient question of fact on the issue of pretext to avoid summary judgment.

14



To make a demonstration of pretext, Plaintiff must show that "but for" his employer's discriminatory intent, he would not have suffered the adverse employment action. EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [ADEA case]; Conkwright v. Westinghouse, 933 F.2d 231, 234 (4th Cir. 1991).  "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole . . . must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [race animus].'" LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993)(citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); see Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000).  After careful review of the arguments and evidence presented, the undersigned finds and concludes that a genuine issue of pretext has been presented sufficient to preclude summary judgment on Plaintiff's claims.

The evidence reflects that Plaintiff has a high school diploma as well as a Business Administrative Degree from a junior college. During the time period at issue, Plaintiff also had almost twenty-four (24) years in general building maintenance experience; was universal CFC certified; had certifications in heating and air conditioning, pneumatics, blue print reading, and refrigerants; and three (3) years experience as a heating and air-conditioning specialist while in the U.S. Army.  Plaintiff's Affidavit, ¶ 25; see also Plaintiff's Attachment 4. These qualifications compared to the other positions and selected candidates as follows:

**Job #990131**. This position was a Trade Specialist III. The employment requirements for this position were a high school diploma or equivalency and at least three (3) years experience in trades or craft of general building maintenance; some technical school training

15



preferred with universal HVAC (EPA) certification; be asbestos certifiable; and be able to operate all equipment normally associated with general building maintenance. Plaintiff's Exhibit 4, pp. 6-7. One (1) African-American, four (4) Caucasians, and one (1) race unknown applicant applied for this position. Three (3) of the white candidates were interviewed, and Donald Sadler (Caucasian) was selected for the position by Kenneth Long (Caucasian). Id.

The evidence reflects that Sadler received an excellent reference from his former supervisor, and Long stated that the reason Sadler was hired was because he was "the most qualified". See Plaintiff's Deposition, (Defendant's Exhibit 11); Plaintiff's Exhibit 1, Attachment 19. Plaintiff argues that pretext has been shown with respect to this position because he was more qualified for this position than was Mr. Sadler. Gairola v. Virginia Dep't of General Servs, 753 F.2d 1281, 1287 (4th Cir. 1985) [Under Title VII, the burden in a failure to promote case is on the plaintiff to establish that he was better qualified for the position sought]. The record reflects that Sadler had the required a high school education (but no advanced degree) with six (6) years general building maintenance experience (compared to Plaintiff's 24 years experience); that he was HVAC universal certified; that he had four (4) months of electrician's class training while in the Navy; and had performed four months service as an electrician's mate in the Navy. Plaintiff's Exhibit 4.

Considered in the light most favorable to the Plaintiff, this evidence shows that, even though Long specifically stated on the hiring document that Sadler was hired because he was the "most qualified", Plaintiff had more extensive certifications and many more years of experience in general building maintenance than did Sadler. This evidence is sufficient to create an issue of fact as to whether Plaintiff was more qualified for this position than was Sadler.

**Job #990559**. This position was a Trade Specialist IV, and required a high school



education with five (5) years of experience in general building maintenance or equivalency; the ability to perform highly skilled preventative and corrective maintenance work on primary heating, air-conditioning, and ventilating equipment; serving as lead mechanic in all National Advocacy Center facilities; and general leadership requirements, such as coordinating trade activities and interaction with both department heads and "blue collar" type workers, as well as excellent written and oral communication skills. <u>Plaintiff's Exhibit 4</u>. Three (3) African-Americans, four (4) Caucasians, and one (1) race unknown candidate applied for this position. Two of the white candidates were interviewed, and Ronald Gentry (Caucasian) was selected for the position in May 1999 by Neal Clark (Caucasian). <u>Id</u>.

Clark's reason for selecting Gentry for this position was Gentry's "experience with the University and background." <u>See</u> <u>Plaintiff's Exhibit 1, Attachment 21</u>. Gentry's qualifications included a high school education, South Carolina Asbestos Class 1-3 License, and seventeen (17) years general building maintenance experience. <u>Plaintiff's Exhibit 4</u> . However, Plaintiff had more years of service with the University, more certifications, more educational experience (although not required), as well as the three years experience as a heating and air-conditioning specialist.

Considered in the light most favorable to the Plaintiff, this evidence is sufficient to create an issue of fact as to whether Plaintiff was more qualified for this position than was Gentry.

**Job #990781**.   This position was also a Trade Specialist IV, and required a high school education with at least two (2) years experience in general building maintenance or equivalency.  This position also required the performance of highly skilled corrective, routine, and preventative maintenance in primary HVAC systems and their associated equipment, including

17



electrical and pneumatic controls. Knowledge of chill water systems, steam supplied systems, electrical circuits, and plumbing preferred, and the applicant also had to be able to read and have good communication skills. <u>Plaintiff's Exhibit 4</u>. Three (3) African-American, five (5) Caucasian, and one (1) unknown race candidate applied for this position. Two (2) African-American and three (3) white candidates were interviewed, and Jason Upton (Caucasian) was selected for the position by Gerald Wilson (Caucasian).

Wilson indicated that he selected Upton for the position because of his "good interview and work history". <u>Plaintiff's Deposition, (Defendant's Exhibit 24)</u>. Upton was a high school graduate, had a track gas pipe license, and approximately five (5) years general building maintenance experience, but all in HVAC. <u>Plaintiff's Exhibit 1, Attachment 27</u>. Plaintiff had twenty-four years general building maintenance experience with certifications in not only heating and air-conditioning but also in pneumatics.

Again, considered in the light most favorable to the Plaintiff, this evidence is sufficient to create an issue of fact as to whether the Plaintiff was more qualified for this position than was Upton.

**Job #980815.** This position was a Trade Specialist III, and required a high school diploma or equivalency and at least three (3) years experience in trades or crafts of general building maintenance. Some technical school training was preferred with universal HVAC (EPA) certification, and it also required the performance of semi-skilled journeyman duties to maintain and repair complex building mechanical systems, auxiliary equipment, and lighting. <u>Plaintiff's Exhibit 4</u>. Four (4) African-American, four (4) Caucasian, and eight (8) unknown race candidates applied for this position. Three (3) Caucasian candidates were interviewed, and Thomas Griffin



(Caucasian) was selected for the position by Carl Cox (Caucasian).

Compared with Plaintiff's resume', Griffin had a high school education with approximately four and a half years of general building experience, but no certifications.  <u>See Plaintiff's Exhibit 1, Attachment 16 and 16(a)</u>.  Again, considered in the light most favorable to the Plaintiff, this evidence is sufficient to create an issue of fact as to whether the Plaintiff was more qualified for this position than was Griffin.

**Job #981011.**  This position was a Trade Specialist III, requiring a high school diploma or equivalency and at least three (3) years experience in trade or crafts of general building maintenance.  Some technical school training was preferred with universal HVAC (EPA) certification. The job required the performance of semi-skilled journeyman duties to maintain and repair complex building mechanical systems, auxiliary equipment, and lighting.  <u>Plaintiff's Exhibit 4</u>.  One (1) African-American, four (4) Caucasian, and seven (7) unknown race candidates applied for this position, with one (1) African-American, two (2) Caucasians, and two (2) unknown race candidates being interviewed. Jeffery Butler (Caucasian) was hired for the position by Kenneth Long (Caucasian).

Long indicated that the reason he hired Butler for the position was because he had "the experience.  He is an in-house employee who knows our operation and the equipment." <u>Plaintiff's Exhibit 1, Attachment 17</u>. Butler had only a tenth grade education; training in electrical work, body repair and plumbing work; a little less than nine (9) years general building maintenance experience; and no certifications. <u>Plaintiff's Exhibit 1, Attachment 18</u>. Plaintiff had the required

19



high school education, which Butler did not,[13] 24 years general building maintenance experience, and numerous certifications. He was also, like Butler, an in-house employee.

Again, considered in the light most favorable to the Plaintiff, this evidence is sufficient to create an issue of fact as to whether the Plaintiff was more qualified for this position than was Butler.

As previously noted, pretext can be demonstrated by evidence showing that Plaintiff was more qualified than the individuals from outside of his protected class who received the promotions. See Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996); Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); Doyle v. Centry Insurance, 877 F.Supp. 1002, 1010, n. 5 (E.D.Va. 1995); Gairola, 753 F.2d at 1287. Although the Defendant has offered additional arguments and evidence to counter Plaintiff's argument for pretext, including claims that Plaintiff had a reputation for not being a hard or dependable worker, as well as that over the course of his employment with the Defendant he had received some disciplinary warnings for various infractions, such as mishandling equipment; see generally, Plaintiff's Deposition, (Defendant's Exhibit 26), pp. 473, 475, 715, 721; Plaintiff's Deposition (Defendant's Exhibit 10); Plaintiff's Deposition, pp. 18, 110; Clark Deposition, pp. 12, 23, 33;[14] the undersigned does not

---

[13]Butler did not meet the advertised requirements for this position since he did not have a high school education. Plaintiff notes that the Defendant's own employment policy provided that "[a]pplicants who do not meet the advertisement requirements will not be referred to the department for consideration." Plaintiff's Exhibit 10, ¶ II (D)(3).

[14]Defendant also complains that the positions Plaintiff claims he was denied due to discrimination have been a "moving target" throughout the course of his administrative filings and this litigation, noting that in his filings with the EEOC Plaintiff claimed he was denied seven (7) positions, that in his interrogatory responses in this case he claimed he was denied ten (10) positions, and that in his deposition he identified thirteen (13) positions, before finally settling on



find that "[n]o reasonable trier of fact could conclude" that Plaintiff was discriminated against on the basis of his race when he failed to receive any of these promotions. Spratley v. Hampton City Fire Dept., 933 F.Supp. 535, 542 (E.D.Va. 1996), aff'd, 125 F.3d 848 (4th Cir. 1997); see Conkwright, 933 F.2d at 234 ["[I]ndirect evidence of discriminatory motive may do [as long as it is] sufficient for a reasonable factfinder to infer that the employer's decision...was motivated by [race]"]; Reeves, 120 S.Ct. at 2105-2109 [setting forth the general proposition that where a plaintiff presents a prima facie case together with sufficient evidence to conclude that the employer's asserted justification for the employment decision is false, a trier of fact can conclude that the employer unlawfully discriminated].

Therefore, Defendant's motion for summary judgment with regard to Plaintiff's race

––––––––––––––––––––––

the nine (9) positions set forth in his memorandum opposing summary judgment. See Plaintiff's Deposition, pp. 51-53, and Plaintiff's Deposition (Defendant's Exhibit 6); Plaintiff's Answers to Interrogatories, p. 9 and Attachment 2. While the undersigned is sympathetic to Defendant's argument, since all of the five positions (except for Job #981011) discussed hereinabove had been identified as part of Plaintiff's claim during the course of Plaintiff's claim and litigation history, they have been considered by the undersigned for purposes of evaluation of the summary judgment motion.

With respect to Job #981011, however, Defendant argues that this position should not be considered by the Court because, although it was one of the jobs discussed by the *Defendant* in its response to the administrative agency's inquiry; see Plaintiff's Exhibit 4; *Plaintiff* had never identified this position as being one being claimed until it appeared in Plaintiff's memorandum in opposition to summary judgment. Defendant argues that it has therefore been denied the opportunity to investigate this position or even question Plaintiff about this claim at his deposition. Plaintiff does not dispute Defendant's characterization concerning the sudden appearance of Job #981011 as being at issue in this lawsuit, and the undersigned therefore concludes that it may not be appropriate to allow Plaintiff to include this position as being one of the failed promotions in this case. However, since there is no way for the undersigned to know at this point whether (in the event this case goes to trial) the District Judge would allow consideration of this job position during the presentation of Plaintiff's case, the undersigned has discussed this position in this Report and Recommendation, supra.

21



discrimination failure to promote claims should be denied.[15]

## IV.

### (Retaliation Claim)

Finally, Plaintiff alleges in his Complaint that his failure to receive any of the promotions at issue was also as a result of unlawful retaliation by the Defendant against the Plaintiff for having engaged in protected conduct (i.e., complaining that his failure to receive a promotion was due to race discrimination). Defendant argues that Plaintiff should not be allowed to proceed with a retaliation claim in this Court because he failed to administratively exhaust this claim. The undersigned is constrained to agree.

It is clear in the law that "[b]efore filing suit under Title VII, a plaintiff must exhaust his administrative remedies by bringing a charge with the EEOC . . . .," and that "[a] plaintiff's EEOC charge defines the scope of [his] subsequent right to institute a civil suit." Smith, 202 F.3d at 247. Hence, if Plaintiff failed to properly exhaust his administrative remedies with regard to his retaliation claim, this claim is subject to dismissal. Tran, 10 F.Supp.2d at 1208; Watson v. Southeastern Pennsylvania Transportation Authority, No. 96-1002, 1997 WL 560181 at *7 (E.D.Penn. Aug. 28, 1997).

_____

[15]In addition to the arguments referenced hereinabove, Defendant also argues that Plaintiff should not be allowed to proceed on his race discrimination failure to promote claims because Plaintiff has alleged that he failed to receive these same promotions as a result of unlawful retaliation by the Defendant. Plaintiff's Answers to Interrogatories, pp. 8-9; Plaintiff's Deposition, pp. 46-49. However, the fact that Plaintiff may believe that unlawful retaliation played a roll in his not receiving these promotions does not mean that he cannot also pursue a race discrimination claim with respect to these positions. Although retaliation and race discrimination are separate and distinct claims, they are not mutually exclusive, and both may be pursued in an employment discrimination action. Cf. Tisdale v. Federal Exp. Corp., 415 F.3d 516, 528 (6th Cir. 2005) [same operative facts supporting both race and retaliation claim].



A review of the administrative charge filed in this matter clearly reveals that, under the "cause of discrimination" section, only the "race" box was checked. Neither the "retaliation" box nor any other box was checked as also being a cause of discrimination in this case. While Plaintiff does not dispute that the retaliation box was not checked as being a cause of discrimination, he argues that a review of the affidavit attached to the administrative charge "makes it abundantly clear that Plaintiff complained of retaliation", and that this issue was therefore before the EEOC and has been exhausted. Plaintiff's Deposition, Exhibit 1; *cf*. Travis v. Frank, 804 F.Supp. 1160, 1164-1165 (E.D.Mo. 1992)[where plaintiff failed to check "reprisal" box on formal complaint, but EEOC actually investigated her retaliation charges, court found plaintiff had exhausted her administrative remedies].

However, the affidavit (jointly signed by Plaintiff and numerous other employees of the Maintenance Service Department) asserted only that the complainants had been "victims of a pervasive matter of racial discrimination within the Maintenance Services Department, that we have previously made our complaints known to the administration at the University of South Carolina, [and] that no corrective or remedial actions have been taken in response to our complaint." The affidavit does not state that the affiants had been denied promotions out of retaliation for complaining about discriminatory conduct. The only possible reference to retaliation by the Defendant to be found in the two page affidavit is one sentence which states "[i]f we complain about racial discrimination through normal channels we are reprimanded and intimidated." Even this one sentence, however, does not indicate the affiants were claiming they had been denied any promotions due to retaliation, nor is any such claim presented anywhere else in the affidavit or on the administrative charge cover sheet which, again, only references "race

23



discrimination" as the discrimination being claimed. <u>Plaintiff's Deposition, Exhibit 1</u>. <u>See</u> <u>also</u>, <u>Plaintiff's Exhibit 1, Attachment 26</u>, p. 0057. Plaintiff has also provided no evidence to this Court to show that a failure to promote retaliation claim was ever considered or investigated by the administrative agency. <u>See</u> <u>Plaintiff's Exhibit 1, Attachment 32</u>, [noting that the charging parties had alleged that they had been "subjected to unlawful discrimination in regard to wages and promotions because of their race," but not mentioning or referencing that any claim for retaliation had been investigated.]

In sum, based on the material filed with this Court, there is no evidence that the Plaintiff exhausted his administrative remedies with respect to any failure to promote retaliation claim. <u>Nicol v. Imagematrix, Inc.</u>, 767 F.Supp. 744, 752 (E.D.Va. 1991)[The scope of a civil action under Title VII is drawn by the scope of the administrative investigation that can reasonably be expected to follow the formal charge of discrimination]; <i>cf.</i> <u>Evans</u>, 80 F.3d at 963 [ "permitting a late amendment to an original discrimination charge adding an entirely new theory of recovery 'would eviscerate the administrative charge filing requirement altogether' by depriving the employer of adequate notice and resulting in a failure to investigate by the responsible agency."] (quoting <u>Conroy v. Boston Edison Co.</u>, 758 F.Supp. 54, 59-60 (D.Mass. 1991)); <u>Lattimore v. Polaroid Corp.</u>, 99 F.3d 456, 464-465 (1st Cir. 1996). Therefore, Plaintiff's retaliation claim should be dismissed.

## Conclusion

Based on the forgoing, it is recommended that the Defendant's motion for summary judgment with respect to Plaintiff's failure to promote claims regarding Job #s 990131, 990559,



990781, 980815, and 981011[16] be **denied**.  In all other respects, it is recommended that the

Defendant's motion for summary judgment be **granted**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

February 10, 2006

---

[16]But see also, note 14, with respect to Job #981011.